## TERRITORY OF HAWAII *v.* RICHARD S. UYEHARA.

### Nos. 4005 and 4016.

ARGUED OCTOBER 16, 1957.                    DECIDED OCTOBER 31, 1957.

RICE, C. J., STAINBACK AND MARUMOTO, JJ.

OPINION OF THE COURT BY MARUMOTO, J.

The case involves the question as to whether the setting up of a pin-ball machine and permitting it to be played for a consideration, with the added inducement of free games upon the attainment of a certain score, constitutes a violation of the gambling statute and the lottery statute, or either of them.

The case began with the filing of an information by the Territory against the defendant. The information consists of two counts. In the first count, the Territory alleged that the defendant violated the gambling statute by conducting a pin-ball game. In the second count, the Territory alleged that the defendant violated the lottery statute by conducting such game.

The pin-ball game, as described in the information, is a game played on a mechanical device hereafter referred

to as pin-ball machine. The game is started with the insertion of a five-cent coin into a slot provided in the machine for its reception. The insertion of the coin releases a number of balls which may be manipulated to attain a certain score, which, if attained, entitles the player to free games. The number of free games is mechanically registered on the machine upon the attainment of the score.

The gambling statute is contained in R. L. H. 1945, § 11343 (R. L. H. 1955, § 288-4) and reads as follows:

"§ 11343. *Playing prohibited games.* Every person who deals, plays, or carries on, opens or causes to be opened, or who conducts either as owner or employee, whether for hire or not, any game of faro, monte, roulette, tan, fan tan, or any banking or percentage game played with cards, dice or any device for money, checks, credit or any representative of value or any other game in which money or anything of value is lost or won, and every person who plays or bets at or against any such prohibited game or games, and every person present where such game or games are being played or carried on, is guilty of a misdemeanor."

The lottery statute is contained in R. L. H. 1945, §§ 11340 and 11341 (R. L. H. 1955, §§ 288-1 and 288-2) and reads as follows:

"§ 11340. *Lottery defined.* A lottery is any scheme for the disposal or distribution of property by chance among persons who have paid or promised to pay any valuable consideration for the chance of obtaining the property, or a portion of it, or for any share or any interest in the property upon any agreement, understanding or expectation that it is to be distributed or disposed of by lot or chance, whether called a lottery, raffle, che fa, pakapio, gift enterprise or by whatever name the same may be known.

"§ 11341. *Maintaining or assisting, etc.* Every per-

son who contrives, prepares, sets up, draws, maintains or conducts, or assists in maintaining or conducting any lottery is guilty of a misdemeanor."

It will be noted that under the statutes quoted above, a requisite element of gambling is that "anything of value" be lost or won and that a requisite element of lottery is that "property" be disposed of or distributed.

The defendant demurred to the first count of the information on the ground that free games are not anything of value and to the second count on the ground that free games are not property. The court below held that free games come within the meaning of "anything of value" in the gambling statute but do not come within the meaning of "property" in the lottery statute. It thereby overruled the demurrer as to the first count and sustained it as to the second count.

The case is before this court on a bill of exceptions filed by the defendant to the order overruling the demurrer on the first count and a writ of error sued out by the Territory to the order sustaining the demurrer on the second count.

In *Territory* v. *Shinohara,* 42 Haw. 29, we held that the conduct of a pin-ball game does not constitute a lottery. In view of such holding we need not decide whether free games come within the meaning of "property" as used in the lottery statute.

*Territory* v. *Shinohara* is limited in its application to a charge of violation of the lottery statute. We stated in that case: "This opinion does not extend to the question as to whether the operation of such device, in the manner alleged in the complaint, violates any other criminal statute. As to such question, we express no opinion because it has not been presented to this court."

Here we are presented with such question because the Territory alleges a violation of the gambling statute, in

addition to a violation of the lottery statute. The language of the gambling statute includes within its prohibition every game in which money or anything of value is lost or won. The game need not be *ejusdem generis* with the games enumerated in the statute. (*Territory* v. *Apoliona,* 20 Haw. 109) Even if the proper interpretation of the statute requires that the game be *ejusdem generis* with the enumerated games, a pin-ball game, in which anything of value is lost or won, is covered by the statute because it is a banking game. A banking game is a game in which there is a fund against which everybody has the right to bet, the bank taking all that is lost by the bettors and paying out all that is won. (135 A. L. R. 120, and cases cited)

In this case there is no cash pay-off. The pay-off comes in the form of a right to play additional games free. So, the crucial question is whether such right is "anything of value." We are of the opinion that it is.

A pin-ball machine which does not pay off in cash or tangible property is played for amusement. A right to obtain amusement has value. Thus, a person who seeks amusement in music pays admission to a concert. To him the amusement is worth the amount of admission. Similarly, a person who seeks amusement in golf pays a green fee for the right to play golf. To him the amusement is worth the amount of green fee. So, a person who seeks amusement in a pin-ball game inserts a five-cent coin in the pin-ball machine. To him the amusement derived from playing one pin-ball game is worth five cents. If he wins a right to play a game free, such right has a value of five cents to him, for if he does not have such right he will be required to pay that amount to play the game.

In *Giomi* v. *Chase,* 47 N. M. 22, 132 P. (2d) 715, the supreme court of New Mexico construed a statute similar to ours. The statute made it unlawful to operate a game

of chance played with any gaming device for money or "anything of value." The lower court had held that the operation of a pin-ball machine with a free game feature did not violate the statute on the ground that although amusement was a thing of value, the form of amusement involved in playing a pin-ball machine and winning free games was not the kind of amusement that the legislature had in mind. The supreme court reversed the holding. As we are in full accord with the reasoning of the supreme court in that case, we quote the pertinent portions of the opinion:

"A study of our statute satisfies us, conformably to the weight of authority and reason, that when the legislature denounced and rendered unlawful 'any * * * games of chance, played with * * * slot machines or any other gaming device * * * for money or *anything of value*', (emphasis ours), it purposely refrained from attempting any enumeration of the multitude of items constituting 'value', tangible and intangible, comprehended within the phrase 'anything of value'. No doubt the legislature, mindful of the ingenuity ever employed to escape the interdiction of anti-gambling laws, reasoned that if it adopted an all embracing, all consuming phrase, such as this, its true meaning and intent could not be defeated by subtle and refined construction. * * * And so it employed language free from ambiguity. We have no right to fritter away its meaning by artful construction.

"The only point of difference between our view of the statute and that of the trial court arises over this very question of the right to construe. It adopted a conclusion requested by defendants to the effect that amusement is a thing of value. Of this there seems no room for argument. The player at a pinball machine proves it when he deposits his five cent coin for the

privilege of playing it. And the correctness of the assertion is but emphasized if the lure and inducement to the first play spring from the hope that before it is ended, luck will favor the player by awarding him additional free games. If, as one of the quoted opinions says, the prize were a theatre ticket, none would question it as constituting value. The fact, however, that the stake won is small does not alter the verity of the principle involved.

"The trial court seemed to entertain the view, however, that although 'amusement' is a thing of value and in some circumstances, if it should constitute the winning, might even be within the interdiction of the statute, that, nevertheless, the form of amusement here disclosed is not the kind the legislature had in mind; hence, was not within the purview of the statute. Thus, construction was resorted to for ascertaining the meaning of an unambiguous statute. The legislature itself makes no distinction between the kinds of value meant and it is not the province of the courts to do so. The rather harmless and innocent character of the amusement afforded the player on the machine in question may suggest to some that it ought to be outside the interdiction of the statute. The legislature has thought otherwise and the matter being one of policy the courts can have no proper concern therewith." (*Giomi* v. *Chase*, 47 N. M. 22, 28, 132 P. [2d] 715, 718)

The defendant relies principally on *Gayer* v. *Whelan*, 59 Cal. App. (2d) 255, 138 P. (2d) 763. There the statute interdicted the possession of any slot machine or other device whereby "any merchandise, money, representative or article of value, checks, or tokens, redeemable in, or exchangeable for money or any other thing of value, is won or lost." In holding that free games are not article of value or any other thing of value, the court, after quoting

definitions of the word "article" in decisions from other jurisdictions, said: "It would therefore seem that the usual and ordinary meaning of the word 'article' is some material or tangible object, although, according to the definitions submitted by defendant, occasionally it may be used to refer to something 'immaterial.' " With reference to the expression "any other thing of value," the court said: "Certainly the amusement of a free game is neither merchandise nor money nor checks nor tokens redeemable in or exchangeable for any other thing of value. Merchandise and money are tangible articles that do not include the intangible amusement of a free game. * * * The same should be true of checks or tokens redeemable or exchangeable for money or any other thing of value. Those checks or tokens must of necessity be at least material or visible in order to be exchangeable."

What is pointed out by these statements is that the context in which the expressions "article of value" and "any other thing of value" are used indicate that they refer to tangible thing. No such limitation may be implied from the context in which the expression "anything of value" is used in our statute.

Affirmed.

*A. Peter Howell,* Assistant Public Prosecutor, City and County of Honolulu (*John H. Peters,* Public Prosecutor, City and County of Honolulu, with him on the briefs), for plaintiff in error in Case No. 4005 and appellee in Case No. 4016.

*John R. Desha II* (also on the briefs) for defendant in error in Case No. 4005 and appellant in Case No. 4016.

OPINION OF STAINBACK, J.
(Concurring in Part and Dissenting in Part.)

I concur in that portion of the opinion of the court holding that the "free games" on the machine are some-

thing of value as used in the Revised Laws of Hawaii 1945, section 11343 (R. L. H. 1955, § 288-4), but I respectfully dissent in the holding that the operation of a pinball machine is not a "lottery."

My reasoning and the authorities therefor are fully set forth in the dissenting opinion in *Territory* v. *Shinohara,* 42 Haw. 29, at page 37.

I remain convinced that both the weight of authority and logic favor the minority opinion expressed in *Territory* v. *Shinohara.* I am more convinced than heretofore of the soundness of the dissenting opinion in that case inasmuch as the case of *United States* v. *Korpan,* 237 F. (2d) 236, cited on page 36 and strongly relied upon in the majority opinion in the *Shinohara* case, has recently been overruled by the Supreme Court of the United States, 354 U. S. 271, decided June 17, 1957. In the *Korpan* case the Supreme Court of the United States held that "A coin-operated gambling machine of the 'pin-ball' type, the operation of which involves the element of chance, as a result of which the player may become entitled either to free plays or to money, is a 'so-called "slot" machine' within the meaning of 26 U. S. C. (Supp. IV) § 4462 (a) (2), and is, therefore, subject to the tax of $250 per annum imposed by 26 U. S. C. (Supp. IV) § 4461."